CROWN CORK & SEAL CO. v. IDEAL STOPPER CO. et aL

(Circuit Court, D. Maryland. June 19, 1903.)

1. PATENTS—ANTICIPATION—BOTTLE STOPPERS.
    The Painter reissued patent, No. 11,685 (original No. 540,072), for a
    bottle stopper, was not anticipated by the British patent to Young, No.
    12,247, of 1848, but covers an invention disclosing novelty and utility,
    and is valid.

In Equity. Suit for infringement of reissued letters patent No.
11,685 for a bottle stopper, issued July 26, 1898, to William Painter
on original patent No. 540,072. On final hearing.

John C. Rose and Robert H. Parkinson, for complainant.
Willis, Homer, France & Smith and Philip Mauro, for defendants.

MORRIS, District Judge. This is a bill of complaint for injunc-
tion and account, filed by the complainant, as the owner of United
States patent No. 540,072, granted to William Painter, dated May 28,
1895, and reissued July 26, 1898, as reissued letters patent No. 11,-
685, for an improvement in stoppers for bottles and other vessels.
The defendant's device is made in accordance with the specifications
of two United States letters patent granted to H. T. Gay—No. 662,-
263, dated November 20, 1900, and No. 669,254, dated March 5, 1901.
It is conceded that, if the complainant's patent is valid, the defend-
ants' device infringes, and should be enjoined. The contention of the
defendants is that the principle of the complainant's device was not
new with Painter, but had been known for half a century at the date
of his alleged invention, having been made known to the public by
the British patent No. 12,247, of 1848, to William Young. The
Painter patent now in suit was before this court in 1900 (100 Fed.
849), and was held to be valid in an earnestly contested suit defended
by the owners of the Hall patent, No. 541,203, alleging, among other
defenses, want of novelty and patentability. Hall had begun his
contest against the patent now in suit in the Patent Office by pro-
testing against the reissue of the Painter patent. Upon appeal from
the decision of the primary examiner dissolving the interference
sought to be declared by Hall very elaborate briefs were prepared
by able counsel for Hall, and submitted with full citation of cases
and a careful presentation of prior patents, including the British pat-
ent to Young of 1848. The objections to the reissue of the Painter
patent were before the examiner in chief in all four times, with the
same references and the same reasoning urged against it as are now
urged in the present suit, and against these objections the patent was
granted, and Hall's interference was dissolved. In the Crown Cork
and Seal Company v. Aluminum Stopper Company (in this court),
100 Fed. 849, the Painter patent now in suit was held valid, but a
narrow construction was given to its claims, and under that construc-
tion it was held that the device made by the defendant in that case
under the Hall patent did not infringe. On appeal to the Circuit
Court of Appeals for the Fourth Circuit (108 Fed. 845, 48 C. C. A.
727) the Painter patent was held to be entitled to a liberal construction

as for a distinctly original invention fundamentally differing from any preceding invention, and it was held to cover the device shown in Hall's patent, and made by the defendant in that case. The court said (page 861, 108 Fed., page 88, 48 C. C. A.):

"In our view it [Painter's invention] represents a distinctly original conception so essentially unlike anything in the prior art that nothing earlier has been presented to us out of which the defendants could read the invention of the patent, or either claim of it. There was no known device which could be converted into the Painter invention by any improvement short of rejection of the entire plan. The answer of the defendants, it is true, stated that this patent was void for want of novelty, and referred to the prior invention of Young in Great Britain in 1848. This was urged by Hall's attorneys upon the attention of the officials of the Patent Office in opposition to the granting of the reissue, and was held by the board of examiners in chief not to exhibit the Painter invention; and the defendant's own expert, Lorenz, testified that the Young patent was not a practical or operative device, and seems so far to have satisfied the learned counsel for defendants on that point that Young's patent was not introduced in evidence."

In the present suit it is upon the same British patent to Young of 1848 that the defendants rely to prove the want of novelty in the Painter patent. The contention of defendants' counsel is that for one reason or another, neither before the examiners in chief in the Patent Office nor in the Court of Appeals, was the British patent to Young given the construction and effect it should have had. It is urged that the examiners in chief were misled as to its construction, and that it was purposely kept from the attention of the Circuit Court of Appeals, although cited in the defendants' answer, for fear that it would not only defeat the Painter patent, but also the Hall patent, which it was the interest of the defendants in that suit to uphold. The last suggestion was based upon testimony given by the witness Carper. He is shown to have been mistaken. The testimony of Mr. Albert H. Walker, the counsel who had charge of the defense, and his letters to his clients, the Aluminum Stopper Company, in February, 1899, written with the frankness of counsel to client at a time when he was making on their behalf, in the most aggressive way, every defense that could be made to the suit of the present complainant against them, sets that question entirely at rest. He wrote:

"Mr. Lorenz is of the opinion that the Young patent does not negative the validity of the Painter patent, because he finds that experiments with the Young models corroborate the view which he originally took of the Young patent, to the effect that the Young combination in question is practically useless, because Young does not provide any way to guide his conical disk into its groove fully and firmly enough to enable it to exert any material resistance to any tendency that the cork may have to be forced out of the bottle by pressure within the bottle. And I am sorry to have to say that I am obliged to concur with Mr. Lorenz in his opinion on this patent. This fault in the Young patent was not pointed out in the Patent Office papers, probably because it did not occur to General Spear, or to the examiners in chief, or to anybody else."

Also on the next day he wrote again:

"We find, on experiment, Young's cork will not expand his disk into its groove when it is cut on a line with the bottom of that groove, because, being yielding, the cork will suffer itself to be indented by the edge of the disk, rather than force that disk outward into its groove. It is apparent to me that Young never made a stopper on that plan, or he would have dis-

covered that it was necessary to not only give the shoulder under the cork a diameter smaller than that of the expanded disk, but also to give the shoulder immediately under the disk groove a diameter less than the expanded disk. On the whole, Mr. Lorenz cannot conscientiously testify that the Young patent shows a useful invention on this subject; and, if not, of course it cannot be successfully used as a defense against the Painter patent. Now, if we were to put Young's patent in evidence, we would help Painter and hurt ourselves, because we would enable him to say that Young tried to solve the problem, and failed to do so; and that, therefore, Painter made an invention in doing so, with such a degree of success as is shown in Figures 5 and 6 of his original patent. It is true that Figures 3 and 4 of Painter's drawing show his metal disk, resting on the packing, the same as Young, except that the metal disk is larger in diameter than the shoulder immediately below its groove, as well as being still larger in diameter than the shoulder below the packing, so that the disk of Painter's Figures 3 and 4 is certain to enter its groove when it is compressed, instead of passing below its groove, as Young's disk is apt to do. But Painter's patent does not confine itself to Figures 3 and 4, but includes also Figure 5; and in the case of Figure 5 there is no such difficulty as renders Young's scheme particularly useless. For these reasons I am convinced that we must give up all hope of making a successful defense on Young; and it is never wise to make any invalid defense in a patent case, because such a defense reflects injuriously upon whatever valid defenses may be interposed in the same case."

These excerpts from Mr. Walker's letters show why he did not press the Young patent, upon the attention of the court, and he now says, when called as a witness, these letters express his final opinion, based not only on the experiments and theoretical views of his own expert witness, Mr. Lorenz, but also "upon a thorough analysis made by myself of the mechanical points which I found involved in the question when I came to give the Young patent a thorough study at about the time the duty was devolved upon me to decide whether to put that patent in evidence on behalf of the defendants." I do not think much can be added to the reasons given by Mr. Walker why the Young patent should be treated as a useless and inoperative device. It is a cork or other elastic stopper, which is inserted in the neck of the bottle. It rests on a shoulder in the neck. It is retained and pressed securely by means of the disk which is introduced in a conical form, and then is flattened by pressure so that it spreads and enters a groove around the inside of the mouth of the bottle. It is true that, having before one a stopper made under the patent in suit and reading the Young specification, in some general way it may be said that all the elements mentioned in the Young specification are to be found in the complainant's device. There is the shoulder inside the neck of the bottle; there is the cork or other elastic material; there is the disk of metal expanded in the groove. But Young's is, after all, a different type of stopper. His is a cork or plug, which is the stopper, and which is kept from coming out by a metal disk or cap. The complainant's is a metal disk, which is the stopper, made tight at its contact with the bottle by an elastic packing of cork or other material. In Young's drawings the cork is shown having a length equal to its diameter, which in an ordinary bottle would be eight-tenths of an inch. Upon applying pressure to flatten out the disk and compress the cork tightly upon the shoulders beneath it, there is nothing to guide the edges of the disk into the groove made to receive it except the resistance of the cork to the pressure. This would be variable and uncertain, and

the disk would not engage with the groove around its entire diameter. This has been demonstrated by experiment, and no one in the 50 years between the date of the Young patent and the Painter patent appears to have ever made a stopper for commercial use after the Young specification. There would seem to be an inherent want of practical value in any device made after Young's suggestion, and the radical changes in it by which some witnesses have attempted to bring it nearer to the Painter device are obviously the result of study of the Painter device. The Painter device is a disk stopper resting upon an inwardly projecting shoulder, and by pressure the disk is expanded into a groove, making a hard and tight contact all around; "but," says the specification, "as it is practically impossible to produce disks or bottle necks perfectly circular, it is desirable to employ a packing of some kind with the disk. This packing may be in the form of a gasket laid in said groove around the edge of the disk, or beneath the same, and between it and the shoulder, but I prefer to employ a disk of the packing material laid below the disk either clamped against the shoulder or forced into the bottle throat below said shoulder and retained there by the disk." The novelty and patentability of the device covered by the patent in suit was subjected to most strenuous objections in the Patent Office before the present claims were allowed. The patent was resisted with great skill and ability in the suit against the Aluminum Stopper Company, and in the Circuit Court of Appeals it was upheld as a distinctly novel construction, the utility of which was demonstrated by the persistent desire of infringers to make use of it.

Although in the present suit greater stress has been laid upon the British patent of 1848 to Young, and a fuller consideration of that patent has been urged upon this court, I fail to find in it an anticipation of the invention of the patent in suit.